If it's the court, counsel, I'm Assistant Federal Public Defender Nell Brown on behalf of the petitioner Mr. Carl Simington. This case is about whether a criminal defendant should have been warned about the trial judge's reputation for vindictiveness, erratic behavior, before he agreed to waive his right to trial by jury and have a bench trial before that judge. It is also about whether a due process required an inquiry by the state courts into the judge's competence after Mr. Simington raised for the first time on appeal pro se a prima facie case that this judge had serious mental impairments that would have impeded his ability to perform his duty as a competent, fit judge. In this case, at counsel's recommendation, Mr. Simington waived his right to a jury and was tried before Portland Judge Sidney Galton in January of 2004. Unbeknownst to Mr. Simington, Judge Galton had a long-standing reputation for being retaliatory and vengeful, for being vindictive, for being erratic, and being unpredictable. That judge had had that reputation earlier as an administrative law judge and from the time he took the bench in 1998. For years, attorneys in Portland had gone through a process called affidaviting, which means to ask for the judge's recusal through submitting an affidavit, arguing that the judge has a bias. Judge Galton had been subjected to affidavit from many other judge. In fact, one of the largest firms here in Oregon, Schwabby Williams, had boycotted the judge, so his reputation was well-known in the legal community and, in fact, well-known to Mr. Simington's attorney, whose affidavit submitted in post-conviction conceded that it might have been that some or even many attorneys would have affidavited him, but the particular attorney, Mr. Fischbach, in this case, had not had negative experiences with the judge. Does that reflect a reasoned, thought-out decision on the part of the trial attorney to essentially go forward with Judge Galton hearing this case? I mean, he obviously knew that there were some lawyers that didn't agree with Judge Galton, but apparently he didn't have any issues with him, right? The trial counsel did not state that he made that tactical decision in his affidavit, but the question really is whether he should have advised Mr. Simington of this reputation and that he was advising, despite this reputation, I believe this judge can be fair in your case. And if he had provided that full advice to Mr. Simington and given him the opportunity to make a knowing, voluntary, and intelligent waiver of his right to jury and his actual decision to choose this judge, despite his reputation in the community, that wouldn't have been a problem. But the trial attorney didn't claim a strategy, and he certainly didn't share that additional information that would weight against that strategy with his client, and it's that advice that I believe is the problem in this case, the failure to provide that complete information so Mr. Simington can make an informed decision about what to do. In order to show prejudice on this claim, we would have to find that something went wrong with this trial, right? Yes. I feel that the standard in Hill v. Lockhart should apply. I couldn't find a case to say that it does. Hill is a case about waiver of jury. It comes up in the plea context there where someone has waived their right to jury. The question of prejudice is whether, had they been properly advised by counsel, would they have chosen to waive if they had the complete information. I think that that standard should apply here. I think there's a suggestion in Hill that it might. The Hensley case I did by opposing counsel suggests otherwise it doesn't do an analysis of Hill, but it does apply Strickland's reasonable probability standard. So I'd say under the reasonable probability standard of Strickland that the outcome has to be different. I think it's very difficult to say in this circumstance whether or not Judge Galton's mental impairments, which come up in the due process claim or attitude, affected his ability to be impartial in this case. That's why the due process claim is, in fact, structural error. It's too hard to look behind the trial transcript and see what goings-on were happening in the judge's head. But the due process claim is different than this effective assistance claim, right? Because there wasn't evidence of mental impairment at the time of the trial. There was. Well, so there is evidence in this case is that the judge suffered a mental impairment from late 2003 until 2005 when he left the bench. So the judge was, in fact, suffering a mental impairment during this entire period and during the time of Mr. Simington's trial. The ineffective assistance claim focuses on what was clearly known in the community, which was the judge's reputation for vindictiveness and erratic behavior. I would suggest that that vindictiveness and erratic behavior may have been a manifestation of the judge's mental impairments that did not become known publicly until later, maybe 2005. But it is clear that the judge was suffering from these problems and under the care of physicians during this entire period of time, 2003 through 2005, and including at the time of Mr. Simington's trial. And that comes in the record on direct appeal when Simington raises the pro se due process claim and he submits the six letters of Judge Baldwin's federal inquiries. What you're arguing is that if a judge picks up a reputation, rightly or wrongly, that that judge is somehow harsh on people accused of crime, and that's the reputation, such as the reputation you're describing here, that any lawyer who allows his client to have his case tried before that judge who may have been perfectly healthy for a minor standing point, is somehow offering ineffective assistance. And across the board, any lawyer who lets that judge try a case is providing inadequate representation. Is that your argument? That's not quite my argument. I think my argument is for a narrower rule. I don't think that any lawyer who allows his client to be tried before such a judge would be ineffective. The question is a little more nuanced in terms of what was counsel's obligation to advise this client in terms of making this choice between a jury and this judge. And because the reputation was so well known, because it was for vindictiveness and erratic behavior, and because counsel was aware of it, I think it's something that any reasonable defendant would want to know in choosing whether to have this judge be the sole decision maker. That's not a typical decision. Usually I'd say that the choice is for a jury. Here they're making a decision to have this gentleman, this judge, be the sole decision maker in the case. And I think in that situation where it is well known and where you're choosing a bench trial, I think the attorney has the obligation to let the defendant know. If the defendant makes a knowing decision to go ahead with Judge Fulton because counsel Fischbach has had good experiences, then that's on Mr. Simon. He's made his decision knowingly. And that's in spite of the lawyer's own personal and direct experience with the judge. And I think an attorney should share that. I've had great experiences with this judge. However, you should know he has a reputation, among other attorneys, for this vindictiveness. And when it's as widespread as it was here and as well known, that entire firms like Schwab and Williams were boycotting this judge, I actually think it raises it to the level where counsel should be advised. Is there anything in the record that indicates there was anything wrong or inappropriate in the way that the judge handled this trial? That's hard to say. I've pointed to some instances in the court where it appears to be some quirky comments by the judge. I don't think that I should be required to show in the record something that appears in the transcript that reflects his mental impairment. When it comes to vindictiveness, I do think that there's a shift in the judge's attitude between trial and sentencing. If you look at the sentencing transcript starting at page 239, the judge begins to have a very different attitude taking on defense counsel, taking on Mr. Symington over a bunch of small issues, whether he had waived time, whether he had an opportunity to plead guilty. And I think the judge does have a different tone. If he had a jury trial that didn't convict him, the judge would have come to sentencing anyway, right? That's correct. The question of vindictiveness, which was his reputation, I think, most likely is going to come in at sentencing rather than at trial. Although I do, one of my arguments is that count three, the sufficiency of the evidence plain, the judge simply got that wrong. Oregon law requires more than mere incidental contact. And Bruce Knight, who is a Black Pantry clerk, testified essentially to incidental contact. Trial counsel argued that that was not enough under the law, and the judge used that argument and did not grant acquittal on that. I think that was a sign that the judge may not have been tracking properly because it's very clear in the Oregon law. Thank you. We'll give you a minute for rebuttal because we'll take you over. Good morning, Your Honors. May it please the Court, Dustin Buehler appearing on behalf of the superintendent in this matter. I'm happy to answer the Court's questions on any of the claims that have been briefed in this case. I would like to focus first on the claims discussed by opposing counsel, specifically the inadequate assistance of counsel claim relating to the jury trial waiver, and then also relatedly the fair trial claim against Judge Goldman, which is mentioned in the briefs as well. Focusing first on the inadequate assistance of counsel claim for the jury trial waiver, the Court has already noted the problems with that claim. First of all, there really is no evidence of any prejudice here regarding what would have happened, what could have happened if another judge had been assessing after an affidavit process, or if the jury had indeed heard that claim. There is no evidence suggesting that the outcome would be any different here. And it is, as you noted, Judge Medeiros, it is Petitioner's burden to show that prejudice. Allegations alone do not clear that threshold in terms of an inadequate assistance claim. But in addition, I point the Court to page 292 of the excerpts of record, and that's the key page from the affidavit from the trial counsel, Petitioner's trial counsel in this case. And on that page, on 292, trial counsel makes very clear that he's well aware that maybe other attorneys in the community don't have good experiences before Judge Goldman, but that he had only had good experiences, had never had any negative experiences, had never seen any evidence of any competency and incompetency issues. And that in his judgment, he thought that there really was no reason to be concerned here. There's a lot of Judge Levy to hold otherwise to suggest that that inadequate assistance would, in essence, require attorneys that have no problems with judges personally to start informing their clients, constitutionally required advice, that other lawyers in the community may have those problems. And that just is not what the Constitution requires in cases like this. Turning to the fair trial claim, which is related to some extent, the key thing here is that the Petitioner has identified nothing in the record during the proceedings, the criminal proceedings, that would suggest that Judge Goldman had any issues with competency. So regardless, even if we were to assume that that is a well-established Supreme Court precedent that a judge in these actual situations must have a certain level of competence to afford a fair trial, there is no evidence of that in the superintendent's briefing. We go page by page and examine the context for each of those statements, and it's clear from that context that there was nothing alarming here and nothing that could support prejudice or any evidence of incompetence on behalf of the judge in this case. So we have all these issues we've been talking about. In a case in which the crime itself, to rise to the level of a robbery, is pretty steady, you'll have to resort to this lady throwing away a bottle of water in order to make this a robbery. I don't understand that, because she was confronted about stealing. She dropped the stuff, as I understand it, and she picked up one of the bottles and walked off, and that's why this is a robbery, right? You're referring to the whole thing since then, I believe. Yes. So that evidence is not as thin as it first appears, certainly. So you're referring to Ms. Souters as the co-defendant who walked out with a bottle of water. And then he gets himself involved in that by coming to her aid or whatever his perspective on it was. Right. So if you look at the record, even in the excerpts, the police report of that incident suggests that the reason that she went into Whole Foods was because, as she says, and I quote, Clara was hungry. And so there is evidence indicating that he knew very well what she was doing, and when she came out, the evidence is clear that there was an invisible contact between her and the security personnel, and then immediately after that, between the petitioner and the security personnel, they then left together after she picked up those items. I think the water bottle is mentioned in the record if that's correct. Yeah. But, you know, we need to remember here, this is on a doubly deferential standard of review. So not only are we looking at the standard from Henry Wichita on sufficiency of evidence, but we have to ask whether the state courts unreasonably applied that very deferential standard, and here a superintendent would submit that what is in the record is sufficient on that doubly deferential standard. Isn't it possible a jury would have decided this differently, though? Could a jury have decided it differently? Perhaps so, but that's just not the question before the court. The question before the court is, given the result that occurred in state court, was that objectively unreasonable? And that's not the case here. Going back to the ineffective assistance, kind of what the prejudice should be, can you respond to your opposing counsel's theory that the question really should be whether he would have waived his right to jury trial if he had been informed of the judge's reputation? That's not how I read this court's opinion in MdV Crist. Now, obviously, MdV Crist arose from the context of a stipulated facts trial, so it's a little different. But my reading of MdV Crist is that when you have a situation where you are giving up your opportunity for a factual dispute before a jury or otherwise, which is exactly what happened here. Well, I mean, here it was before a judge, so it's maybe even less pressing in some senses. But when you make that decision, you need to point to some sort of difference in the outcome or possibility that that could occur. And in this case, there is nothing to even suggest that that's possible. So it's not even like this is a case where there is some evidence of that. Here there's no evidence of that. The only thing we have is his allegation in the petition that he would have chosen a jury, had he known. That's it. And that's just insufficient under this court. Why can't we piece that together with the fact that, or at least if we believe that the evidence was created on these claims, so a jury, as you said, could decide them differently. If you take he would have not waived the jury trial, a jury might have done this differently to some sort of prejudice. So I just don't think the record bears that out. We can speak hypothetically in this courtroom about whether perhaps it could have gone a different way, but that argument has not been made in any significant form in the briefing and in the papers and the excerpts. And there's no evidence. There's nothing from below that would indicate that that is indeed a possibility in this case. And when I'm speaking of that, really what I'm saying there is that you can always look at evidence and perhaps make it line up so that theoretically it could come out a different way. And that's too hard work for this court to engage on in the double deference it gives to these situations. If this court has no further questions, Ms. Pertetta would ask you for them. Thank you very much. We'll give you a minute for a rebuttal. On the prejudice issue, I think Judge Levy has really brought up something that's very important. The evidence in this case was very thin that this was a robbery. This is stealing cigarettes from various places and stealing a bottle of water. Judge Fulton gave the maximum sentence to lay consecutive mandatory Measure 11 sentences, totaling 156 months. I think that the sufficiency claims are highlights where a jury might have gone a different way on this stuff. In particular, whether or not that Whole Foods claim actually, I'm sorry, incident actually rose to the level of robbery rather than some kind of theft. Whether Bruce Knight was actually physically, I'm sorry, Your Honor. I was just going to ask, suppose, for example, that it had been reversed. Suppose that the attorney had suggested that they had not waived jury, that they would have gone to a jury trial where he had been convicted. Would the appellant not be in the same position to argue, well, perhaps my lawyer should have told me that I should try this before Judge Galton because we might have had a better chance of getting an acquittal beforehand. Isn't that a real possibility in any of these cases? Any time that you have a lawyer acquiescing client, let's try this case before a jury, let's not try it before a jury. I think the difference is that you have a constitutional right to trial by jury, and you have to do a knowing involuntary and intelligent waiver of that right in order to have a bench trial. So it's giving up a constitutional right, which requires counsel to advise the client in certain ways so that that is a fully intelligent waiver, whereas doing the opposite isn't necessarily going to require the same advice. I don't think we're going to look backwards in every case. You're right that if you were going to go that way, you could do that in every case. I don't think that that's the case because you're not waiving that constitutional right. Thank you. Thank you, both sides, for the very helpful arguments. The case is submitted. I think we should take our recess before the next case. Let's take a ten-minute recess, and then we'll continue with our last two cases.
judges: Leavy, Friedland, Benitez